MARY A. HARRIS, administratrix, *vs.* PUTNAM MACHINE COMPANY.

Worcester.    February 28, 1905. — May 17, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Negligence,* Employer's liability.

In an action against a machine company for causing the suffering and death of the plaintiff's intestate and husband, who was the foreman of the defendant's foundry and an experienced moulder but not a machinist, by the contents of a ladle of molten iron being spilled upon him from the simultaneous breaking of two bolts securing an iron yoke which held the top of a crane to which the ladle was attached against a timber extending across the foundry, if it appears that the bolts had been in use for fifteen years during which they at times had been loose and subjected more or less to shock, and that both of them were crystal-

lized, it is a question of fact for the jury whether the failure to subject the bolts to some kind of examination or to replace them by new ones was negligence on the part of the defendant.

TORT, under R. L. c. 106, § 72, with a count at common law, for causing the conscious suffering and death of the plaintiff's intestate by the spilling upon him of the contents of a ladle of molten iron upon the simultaneous breaking of two bolts holding a yoke supporting a crane to the end of which the ladle was attached. Writ dated January 13, 1903.

At the trial in the Superior Court before *Lawton*, J., it appeared that the plaintiff was the widow of the intestate, that the accident occurred at about five o'clock in the afternoon of October 9, 1902, and that the intestate after about twelve hours of conscious suffering died on the following day, that the intestate was foreman of the defendant's foundry and had acted in that capacity for seven years, and for several years before that time had been a moulder in the defendant's foundry, that he was fifty-two years old and had been a moulder about twenty-six years continuously, that he had never been a machinist, that the cause of the accident was the giving way of a fixed crane or derrick of the defendant used in the foundry, from the breaking of two bolts which secured an iron yoke to the side of the timber which extended across the foundry. The yoke held the top of the crane against the timber. There was evidence that before certain repairs were made the bolts had been loose in the timber so that the yoke slipped on the side of the timber, and an expert for the plaintiff testified that in his opinion the looseness might have begun after the first six months of its use, and gave as the reason for his opinion the shrinking of the timber owing to the excessive heat in the foundry. It appeared that the foundry was built in 1887, and that the bolts had been there ever since that time. When the crane or derrick fell, by reason of the breaking of the bolts, a ladle of molten iron containing from four to five tons was suspended from the end of the crane. The plaintiff's intestate was on one side of this ladle when the bolts gave way, and the ladle fell, tipped over and spilled its contents upon the intestate. The plaintiff testified, against the objection of the defendant, that the president of the defendant interviewed her after the funeral, and said that the derrick broke

and a ladle fell and tipped on something that threw the hot iron upon the intestate's back, and said that the bolts were both crystallized.

At the close of the evidence the judge ruled that upon all the evidence the plaintiff was not entitled to recover, and ordered the jury to return a verdict for the defendant. The plaintiff alleged exceptions.

*C. E. Tupper*, for the plaintiff.

*C. F. Baker & W. P. Hall*, for the defendant.

HAMMOND, J. The plaintiff's intestate was an experienced moulder, and at the time of the accident was foreman of the foundry, directing the beds where the moulding was to be done, and having the general charge of the foundry work; but he was not a machinist; and, while he was expected to give notice to the superintendent if he saw any evidence of a defect or want of repair in a crane or a derrick, he had nothing to do with the repairs. The responsibility for the repairs did not rest upon him but on his superior officer.

The weight of the pot of molten iron which was upon the crane at the time of the accident was no heavier than usual; and it does not appear that the crane was subjected to any strain which might not reasonably have been anticipated. It might therefore be inferred that the bolts were not strong enough to hold up the crane under the conditions reasonably to be expected in the ordinary work, and therefore that the apparatus was defective.

The duty owed by the defendant to the intestate was that of using due care to see that the apparatus was in proper condition. It was an important duty. Plainly, if the crane should give way and spill a large mass of molten iron, the lives of the workmen might be in peril. It would serve no useful purpose to recite in detail the evidence. It is sufficient to say that in view of the number of years during which these bolts had been in use, the number of times the yoke had been loose and the bolts subjected to shock, the consequent liability of the iron to crystallization and a resultant weakening, and the great danger to life and limb of the workmen by possible breaking of the bolts, the question whether the failure either to subject the bolts to some kind of examination or to replace them by new ones so

that the necessary strength of the apparatus should be maintained was negligence on the part of the defendant, was a question of fact for the jury.

*Exceptions sustained.*